*M. D. Dickerson, solicitor-general,* contra.

---

4502.  BOWLES *v.* THE STATE.

The verdict, being without any evidence to support it, was unauthorized by law. (RUSSELL, J., dissents.)

DECIDED DECEMBER 10, 1912.

Accusation of misdemeanor; from city court of Madison—Judge Anderson. October 15, 1912.

Sap Bowles and Grant Bowles were jointly indicted for a violation of the Penal Code (1910), § 719. The indictment charged that the accused "on the 4th day of November, in the year of our Lord nineteen hundred and eleven, with force and arms, did falsely and fraudulently, and with intent to defraud E. H. George, represent to said E. H. George that on the Monday and Tuesday prior to said date they had jointly picked 1,000 pounds of seed-cotton on the farm of said E. H. George and for him, and did on the faith of said representation induce said E. H. George to pay them the sum of $5.00 for picking said cotton, when in truth and in fact, as the said Sap Bowles and Grant Bowles then and there

well knew, they had not picked said 1,000 pounds of seed-cotton; whereby loss was sustained by said E. H. George in the sum of $2.00, contrary to the laws of said State," etc. Under this indictment Grant Bowles was convicted. His motion for a new trial, based on the usual general grounds, was overruled, and he excepted.

The State proved, in substance, the following facts: The accused and their wives were cotton-pickers, going from farm to farm picking cotton by the day. The four picked cotton for the prosecutor, E. H. George, under contract, at 55 cents per 100 pounds. The amount of cotton picked and the time occupied in picking were recorded by the prosecutor's superintendent, who furnished a statement to the prosecutor on each Saturday, in order that it might be determined how much he owed for the picking. These two negro boys came to the prosecutor on Saturday morning and stated to him that they and their wives had picked cotton for for him for two days, and would like to be paid. He replied that he had not received a report from his superintendent, and could not determine exactly how much he owed them. They again came and asked him to pay them. He finally paid them $5 on their statement as to the quantity they had picked, with the understanding that if the report of the superintendent showed that he paid them too much, they would return and work it out, or let it go as a credit on the next picking, and if he paid them too little, he would make it good. According to his testimony, neither one of the accused stated to him, when they came to his office, that they had picked any definite amount of cotton; they said they knew they had picked 600 pounds the first day, and that they did not know how much they picked on the second day, but they thought they had picked at least as much as 400 pounds on the second day, and that they had picked 1,000 pounds in all. "They demanded payment for what they had picked; they did not profess to know how much they had picked, but they stated positively that it was at least 1,000 pounds." He therefore paid them $5 for themselves and their wives, with the understanding above indicated. When the report was received from the superintendent, it showed that the statement that they had picked 600 pounds on the first day was true, but that they picked less than 400 pounds on the second day, and that the total amount was only 750 pounds, instead of 1,000

pounds. According to the testimony of the prosecutor, he was to pay them at the rate of 55 cents per 100 pounds, and, therefore, for the 750 pounds of cotton which they had picked, according to the statement of the superintendent, he owed them $4.14½ and he had overpaid them 85½ cents. When he found out this fact he sent his superintendent to see the negroes, who were then picking cotton for other persons some distance away. The superintendent told them of the overpayment and demanded that they return and pick cotton for Mr. George until the overpayment was made up. They replied that they "couldn't come now, that they had to pick cotton for the people that they were living with," but that they would "come and work out what they owed Mr. George," if he would send his wagon for them and haul them to and fro, as it was a very long distance to walk. This the superintendent declined to do. Nothing further was said on the subject, but before the negroes were through with the job they were on, Mr. George took out a warrant against them.

*M. C. Few,* for plaintiff in error.

*A. G. Foster, solicitor,* contra.

HILL, C. J. (After stating the foregoing facts.)

A consideration of the evidence not only fails to show either a fraudulent act or a fraudulent intent, but, reasonably and fairly construed, it clearly disproves the existence of either a fraudulent act or fraudulent intent. There seems not to be the slightest suggestion of bad faith on the part of the accused in the transaction. They naturally wanted their money for the cotton they had picked, and it is perfectly apparent that their statement of the amount was intended simply as an estimate. The prosecutor himself swore that they did not make a statement as to the exact number of pounds which they had picked, when they came to the office for the money, but told him that they had picked at least 1,000 pounds, and, in his own language, they simply "demanded payment for what they had picked," but did not profess to know the exact amount of cotton which they had picked. If these two negroes had intended to perpetrate a fraud on the prosecutor and get more money than they were entitled to for their work, it is altogether probable that they would not have been so conservative in their estimate. If their intent was to swindle Mr. George, surely they would not have taken the risk of doing so for between 21 and 22

cents apiece. Neither did they refuse to carry out their agreement and make good the excess which George had paid them. They agreed to do so if he would send his wagon for them as soon as they had finished the job they were then on. They could not in good faith have left their employment, and their request that he send his wagon for them was not, under the circumstances, unreasonable. Certainly it seems that before taking out the warrant he should have waited until the negroes had finished the job they were then on, and have given them an opportunity of either refunding the 85½ cents or picking cotton to that amount for him. It seems to us that under the facts of this case, where absolutely no indication of bad faith on the part of the accused was shown, and where all the evidence indicated good faith, it would be a miscarriage of justice if this verdict should be allowed to stand. In our opinion the verdict was wholly without evidence to support it, and was therefore unauthorized by law.

*Judgment reversed.*

Russell, J., dissenting. Though the amount involved was very trivial, the verdict is not entirely unsupported by evidence indicating a fraudulent intent; and the trial judge did not, in refusing a new trial, abuse his discretion.